**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LONNIE DANIELS, | : | |
| | : | Civil Action No. 02-4529 (AET) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| TERRY MOORE, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> LONNIE DANIELS, Petitioner Pro Se
> #207380/SBI #336193-B
> South Woods State Prison
> 215 Burlington Road South, P.O. Box 6000
> Bridgeton, New Jersey 08302

> MICHAEL C. BORGOS, ESQ.
> Office of the Mercer County Prosecutor
> P.O. Box 8068
> Trenton, New Jersey 08650
> Attorneys for Respondents

**THOMPSON, District Judge**

This matter is before the Court on petitioner Lonnie Daniels' application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

Petitioner, Lonnie Daniels ("Daniels"), is presently confined at the South Woods State Prison in Bridgeton, New Jersey, serving a 45 year prison term, with a 22½ year parole disqualifier.

On December 17, 1991, a Mercer County Grand Jury indicted Daniels on one count of robbery in the first degree; one count of burglary in the second degree; and one count of attempted aggravated sexual assault in the second degree.  Daniels was tried by jury before the Honorable David J. Schroth, J.S.C. in a three-day trial in January 1993.  The jury found Daniels guilty on the first degree robbery count, the second degree burglary count, and on a lesser-included offense on the third count, attempted aggravated criminal sexual contact in the third degree.

On September 17, 1993, Judge Schroth sentenced Daniels.  The court granted the State's motion for an extended term.  In determining the sentence, the court reviewed the aggravating factors and found that factors one (the gravity and seriousness of the harm inflicted on the victim), six (the extent of his prior criminal record with serious criminal convictions), and nine (need for deterrence) were present.  The court found no mitigating factors.  Daniels was sentenced to 40 years in prison with a 20 year parole ineligibility on the robbery count, and a

consecutive term of five years in prison with a 2½ year parole disqualifier on the third count.  The court granted the defense counsel's motion to merge the burglary count into the robbery count for sentencing purposes.

Daniels filed a direct appeal from this conviction and sentence, and the New Jersey Appellate Division affirmed both on June 9, 1995.  The New Jersey Supreme Court denied certification on November 15, 1995.  Daniels then filed his first state motion for post-conviction relief ("PCR"), which was denied after a hearing held before the Honorable Anthony J. Parillo, J.S.C. on February 7, 1997.  On January 12, 1998, the Appellate Division reversed Judge Parillo's ruling and remanded the matter for a full evidentiary hearing.

On June 28, 1999, the Honorable B. Thomas Leahy, J.S.C. conducted an evidentiary hearing on Daniels' PCR motion.  Judge Leahy denied the motion that same day.  On November 14, 2001, the New Jersey Supreme Court denied Daniels' petition for certification.  See State v Daniels, 170 N.J. 388 (2001).

Daniels filed this federal habeas petition on or about September 16, 2002.  After three extensions to file an answer were granted by this Court, the Court received respondents' motion to dismiss the petition as time-barred on August 4, 2003.  This Court denied the respondents' motion, by Opinion and Order dated November 19, 2004 (Docket Entry Nos. 16 & 17), finding the

3

petition was timely filed.  The Court directed the respondents to file an answer to the petition, with the relevant record, within 45 days of the November 19, 2004 Order.  The respondents filed their answer on January 3, 2005, together with the relevant state court record.

## B.  Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation:

> At home in bed late at night, the victim heard an intruder inside the house.  She called the police via 911, and while she was talking to the police dispatcher, the defendant suddenly appeared in the bedroom doorway.  What followed was overheard on the open 911 line, including the victim's protestations and defendant's threats and demands.  When the police arrived they proceeded upstairs, heard a struggle in the bedroom and found the victim, naked, and defendant with his hands on the victim's shoulders and neck area.  The defendant was handcuffed and when searched, the victim's credit card was found.  Both the victim and the dispatcher testified at the trial, providing a substantial basis for the jury to convict defendant of robbery, burglary and attempted assault by sexual contact.

(R42-43, Appellate Division opinion decided June 9, 1995).

## II.  CLAIMS FOR HABEAS RELIEF

Daniels raises the following claims in his federal habeas petition:[1]

---

[1]  The State does not contend that any of Daniels' claims are unexhausted, and this Court finds that the claims have been fully presented to the state courts for review.

Ground One:   Daniels was denied effective assistance of trial counsel.  (Petition, ¶ 12.A).

Ground Two:   Daniels was denied effective assistance of appellate counsel.  (Pet., ¶ 12.B).

Ground Three:  The trial court erred in admitting the altered, prejudicial emergency 911 tape and transcript into evidence.  (Pet., ¶ 12.C).

Ground Four:   The judge committed plain error when he permitted non-expert testimony.  (Pet., ¶ 12.D).

Ground Five:   Daniels' sentence was excessive because of aggravating factors one and two.  (Pet., ¶ 12.E).

Ground Six:   The trial court denied Daniels his right to a trial by jury and his due process right to a fair trial because of improper charges to the jury.  (Pet., ¶ 12.F).

Ground Seven:  The cumulative effect of the errors complained of rendered the trial unfair.  (Pet., ¶ 12.G).

III.   STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Daniels is

a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  <u>Id</u>.  Under the
"unreasonable application" clause, a federal court may grant the
writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of [the petitioner's] case."
<u>Id</u>. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u>
<u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>,
532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171
F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v.</u>
<u>Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it

7

resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such *de novo* review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28

8

U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  <u>ANALYSIS</u>

A.  <u>Ineffective Assistance of Trial Counsel</u>

Daniels asserts a litany of errors by his trial counsel, which he claims denied him effective assistance of counsel in violation of his Sixth Amendment rights.  He complains that (1) counsel failed to give an opening statement at trial; (2) counsel failed to object to testimony and cross-examine key state witnesses; (3) counsel was antagonistic to Daniels during the aborted plea agreement, and during Daniels' direct testimony at trial; (4) counsel failed to make a motion for a directed verdict on first degree robbery and attempted sexual assault based on the victim's lack of serious injury; (5) counsel failed to obtain appropriate medical records of the victim and cross-examine her on her injuries; (6) counsel failed to object to the admission of prejudicial portions of the 911 tape, which Daniels asserts was doctored; and (7) counsel failed to request a self defense charge to the jury.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated

9

in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under
<u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment
violation must demonstrate that his counsel's performance fell
below an objective standard of reasonableness, assessing the
facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-
89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102(3d Cir. 2005); <u>Keller v.
Larkins</u>, 251 F.3d 408, 418 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 973
(2001).  Counsel's errors must have been "so serious as to
deprive the defendant of a fair trial, a trial whose result is
reliable."  <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting
an ineffectiveness claim, the performance inquiry must be whether
counsel's assistance was reasonable considering all the
circumstances."  <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, Daniels must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1.  *Failure to Give an Opening Statement*

In his PCR motion, Daniels argued that his trial counsel was ineffective for failing to give an opening statement.  The PCR court noted that, under N.J. Ct. R. 1:7-1(a), the opening statement in a criminal trial is optional with the defendant. This rule accords with the right of a criminal defendant not to have to disclose his defense in advance of trial.  See State v. Trantino, 44 N.J. 358 (1965).  (6T, 14:16-25).  The court also

11

found that trial counsel's failure to give an opening statement "will not ordinarily constitute remedial ineffective assistance of counsel" [Pressler, comment 1 to N.J.Ct.R. 1:7-1] because such a waiver is generally construed to be a strategic decision, which are virtually unchallengeable.  (6T, 15:1-11).

The trial court further found that petitioner's claim was baseless and purely speculative because he was unable to "identify what, if anything, trial counsel could have offered in opening statement which would have materially altered the result below."  (6T, 15:12-20).  Given the strength of the State's case, the court ruled that trial counsel's failure to give an opening statement did not materially affect the jury's verdict.  (6T, 15:21-25).

After reviewing the record, this Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  The state PCR court found that the decision by defense counsel not to give an opening statement was plainly trial strategy, as admitted by counsel during the evidentiary hearing on the matter.  (7T, 5:20-7:11).  Daniels has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot

be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

2.  *Failure to Object to Testimony and Cross-Examine Key State Witnesses.*

Next, Daniels argues that his trial counsel should have objected during the testimony of Detective John Guido; Officer O'Donnell; and Investigator Martin Killmer regarding the 911 tape and its authenticity.

At the evidentiary hearing on the remanded PCR motion, Daniels' trial counsel testified that Daniels had written to him urging counsel to use the 911 tape as part of his defense.  Trial counsel, Edward Belmont, Esq., testified that he had listened to the tape two or three times before the Driver hearing.[2]  At the Driver hearing, Belmont compared the tape to the transcript and objected to one or two discrepancies.  The tape's authenticity was not disputed, although it had been enhanced to reduce background noise and the talking by the police.  (7T, 32:1-33:24).  Belmont further testified that he declined to cross-examine these witnesses with respect to the 911 tape because it would have drawn more attention to the tape, which counsel felt "was devastating enough without corroborative testimony from other witnesses who heard the same tape and who either iterated

---

[2]  State v. Driver, 38 N.J. 255 (1962).

13

or reiterated graphic aspects of the tape which were inimical to my client's penal interest."  (7T, 34:17-35:13).

The state PCR court found that counsel's decision not to cross-examine witnesses on the 911 tape, which emphasis could only have hurt Daniels, was a tactical or strategic decision, as admitted by counsel during the evidentiary hearing on the matter. (7T, 34:17-35:13).

Decisions by trial counsel with regard to examination of witnesses are strategic by nature and necessitate a strong level of deference to the attorney's assessment.  See Diggs v. Owens, 833 F.2d 439, 444-45 (3d Cir. 1987), cert. denied, 485 U.S. 979 (1988).  Here, counsel decided that cross-examining these witnesses with respect to the 911 tapes would have unduly highlighted the importance of the tapes.  There is no deficient performance when counsel's decision was plainly a strategic choice.  The Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor was the court's decision contrary to established federal law set forth in Strickland.  Daniels has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo, 171 F.3d at 891.  This claim will be denied for lack of merit.

14

3.   *Failure to Object to Admission of Portions of the 911 Tapes.*

As discussed above, a <u>Driver</u> hearing was conducted with respect to the authenticity of the 911 tapes.  It was determined by the trial court that the 911 tapes were authentic and they were admitted at trial with the transcript.  Trial counsel made several objections as to the transcript, on certain portions where he found discrepancies.  Thus, there is absolutely no basis for petitioner's claim of that counsel was deficient in this regard.

4.   *Failure to Obtain Medical Records and Cross-examine Victim on her Injuries.*

Next, Daniels contends that his trial counsel was ineffective for failing to obtain the victim's medical records and vigorously cross-examine the witness/victim on the extent of her injuries, namely, that she had suffered a fractured cheekbone or broken nose.  Daniels quibbles with the victim's testimony that her nose was broken, and that the victim sustained serious medical injuries.

The PCR court found these claims to be groundless:

On the issue of the victim saying that she had a fractured cheekbone, people can say things about their own body. ... There was absolutely nothing wrong with her saying that or in counsel not making a big deal out of it.  All you needed was for him to cross-examine her heavily and hard to make her a martyr and generate the sympathy of the jury because of an argument about whether she had a fractured cheekbone.

15

(7T, 59:9-18).

As stated earlier, counsel's decision not to press the issue of the injuries was a calculated strategy with respect to the nature and extent of his cross-examination of the victim.  At the evidentiary hearing, counsel responded:

> I don't think I did any inquiry as to the nature of the injuries to the victim, because the charges were such that the injuries themselves were largely irrelevant.  The way that the aggravated assault charges, the aggravated sexual assault or aggravated assault charge statute is drafted it's the intention of the perpetrator not necessarily the sustaining of wounds.  If someone shoots at someone else with purpose to inflict bodily injury or serious bodily injury if that person happens to miss that doesn't make the nature of the assault any less severe.

(7T, 13:21-14:5).  Counsel further stated:

> I certainly don't go out of my way on cross-examination to try to reinforce in the minds of the jurors injuries or actions taken which are inimical to my client's penal interests.  That undoubtedly would have just reinforced in the minds of the jury her own testimony as graphic as that was and as blood curdling as it sometimes was, so that would have been a very good tact for me not to have asked any further questions of her regarding her injuries.

(7T, 16:22-17:5).

This Court finds that trial counsel's decision not to press the victim with respect to her injuries was a well-reasoned, strategic decision.  The decision does not demonstrate a deficiency in trial performance; rather, it shows an astute counsel trying to minimize the damage such testimony would have on defendant's case.  There is nothing in the record to indicate that the state court decision on this issue was based on an

16

unreasonable application of the facts in light of the evidence presented at trial.  Nor was the court's decision contrary to established federal law set forth in <u>Strickland</u>.  Thus, Daniels has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891. This claim will be denied for lack of merit.

   5. *Failure to Make a Motion for a Directed Verdict.*

   Daniels also contends that his counsel was deficient for failing to make a motion for a directed verdict on first degree robbery and second degree aggravated sexual assault.  This claim is clearly without merit.  Daniels' trial counsel cannot be expected to make a motion for a directed verdict when the State's case was overwhelming and strong against defendant.

   To establish ineffective assistance of counsel based on a failure to make a motion, Daniels must be able to show that the motion would have succeeded.  Counsel's failure to make motions does not <u>per</u> <u>se</u> constitute ineffective assistance of counsel. <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 383-84 (1986); <u>Jelinek v. Costello</u>, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would have been granted or sustained had it been made. <u>United States v. Oakley</u>, 827 F.2d 1023, 1025 (5th Cir. 1987). Thus, "[c]ounsel cannot be faulted for failing to pursue

17

meritless or futile objections." <u>Johnston v. Love</u>, 940 F. Supp.
738, 776 (E.D. Pa. 1996), <u>aff'd</u> 118 F.3d 1576 (3d Cir.), <u>cert</u>.
<u>denied</u>, 522 U.S. 972 (1997); <u>see</u> <u>also</u> <u>Bolender v. Singletary</u>, 16
F.3d 1547, 1573 (11th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 1022
(1994)(failure to raise non-meritorious issues does not
constitute ineffective assistance of counsel).

    This Court finds nothing in the record to support Daniels'
meritless claim that counsel should have requested a directed
verdict after the mountain of evidence shown at trial on the
State's case.  The PCR court found that the evidence against
Daniels "was so strong and so voluminous.  There was so much of
it and it was so persuasive that nobody could have saved
[Daniels'] skin."  (7T, 61:22-24).  Counsel cannot be expected
to raise a motion for a directed verdict when the evidence
presented by the State strongly indicated that such a motion
plainly would not have succeeded.

    6. *Failure to Request a Self Defense Charge*

    Daniels next asserts that his counsel was deficient in
failing to request a self defense charge.  At the evidentiary
hearing, counsel stated that his decision not to request a self
defense charge to the jury was a tactical choice so as not to
lose any credibility counsel may have established with the jury.
(7T, 10:16-12:20).  The PCR court agreed, finding that:

        On the issue of self-defense instruction, I am satisfied
        that the law does not require an attorney to pull the rug

out from under his client every time the defendant says it
was self-defense.  The law does not require that defense
counsel make an ass of himself and an idiot of his client by
arguing that there should be a charge regarding the state's
burden to prove the absence of self-defense every time a
client in the face of proofs that it clearly was no self-
defense when you're the intruder in someone's home in the
dark of night and enters their bedroom and they're injured.
It's not a self defense situation.

(7T, 59:20-60:5).

There is nothing in the record to indicate that the state
court decision on this issue was based on an unreasonable
application of the facts in light of the evidence presented at
trial.  Nor was the court's decision contrary to established
federal law set forth in Strickland.  Thus, Daniels has not
demonstrated that the state court decision, when evaluated
objectively and on the merits, resulted in an outcome that cannot
be reasonably justified.  Matteo, 171 F.3d at 891.  Therefore, on
this claim, the Court concludes that Daniels has failed to
demonstrate ineffective assistance of trial counsel.

7. *Counsel's Antagonism at Trial and Plea Hearing*

Daniels also complains that his counsel was deficient and
prejudiced him at trial, by being argumentative and portraying
Daniels in a bad light during Daniels' direct examination.
Daniels further states that his counsel should not have been so
belligerent during the plea hearing.

19

a.  Plea Hearing

On the second day of trial, after the victim's testimony from the day before, defense counsel indicated that Daniels wished to enter a plea agreement on all three charges.  The matter was discussed before Judge Schroth, who reviewed the four-page plea form with Daniels and his attorney.  Judge Schroth informed Daniels of his right to trial, the State's burden of proof, the consequences of a plea, the maximum penalty that could be imposed, and the requirement that Daniels would have to be examined at the Adult Diagnostic and Treatment Center in Avenel, New Jersey, based on the sexual assault charge, for determination as to whether he should be sentenced at Avenel due to repetitive and compulsive behavior.  (3T, 5:21-8:12).

Daniels responded that he understood the implications of his decision to accept the plea agreement.  (3T, 3:19-10:1).  Yet when he had to recite the factual basis on each charge, Daniels refused to allocute with respect to the third count of attempted aggravated sexual assault.  (3T, 13:16-14:3).  The State withdrew its plea offer.

Daniels complains that his counsel was belligerent and cut-off the plea agreement.  However, the record does not bear this out.  Daniels was unwilling to admit to the facts supporting the attempted aggravated sexual assault charge.  The trial court and the prosecutor both rejected Daniels' plea because it was not

supported by a proper factual basis.  Defense counsel had to
pointedly question Daniels in an effort to have Daniels allocute
a legally sufficient basis for the plea.  When it became apparent
to counsel that Daniels was not able to do so, counsel strongly
advised his client: "we're either going to trial or not, it's
your choice, Lonnie.  Forget this nonsense."  (3T, 13:7-10).

There is absolutely no factual basis for Daniels' claim that
his counsel was deficient in this regard.  Daniels chose to go
forward with his trial because he was unwilling to admit to facts
concerning the attempted aggravated sexual assault charge.  At
that point, there was nothing defense counsel could do to effect
the plea agreement because Daniels refused to plead the necessary
factual basis for such plea.  The trial court would not accept it
and the State withdrew its offer.  Thus, this claim will be
denied as substantially meritless.

b.  Daniels' Direct Examination

Daniels also takes issue with trial counsel's direct
examination of Daniels at trial.  Daniels claims that counsel was
hostile, contradictory, and belligerent to him during his
testimony, which portrayed Daniels in a bad light to the jury.
He cites specific examples, such as, the question posed about
people having guns in their home to protect themselves from
people like Daniels; and questioning Daniels on the difference
between a fractured nose and a broken nose.

Defense counsel testified at the evidentiary hearing that he was trying to maintain his credibility with the jury during Daniels' testimony. The PCR court found that Belmont was a highly effective advocate:

> Any argument that Mr. Belmont did not advocate zealously on your behalf is totally wrong. His performance was excellent. He did advocate zealously his representation of you and I doubt that I can make this clear to you, but I'm going to try. It was more sophisticated than you could understand. He did better by you than you could grasp that he was doing. You wanted a buddy to argue what you wanted and that you were a nice guy. He was being much smarter than you in the defense he gave you. He wanted to persuade the Jury not to find you guilty of the worst level of each charge against you. To do that he was trying to show the Jury that you admitted when you were wrong and you're only fighting about the things the state was exaggerating. You wouldn't play.

(7T, 57:19-58:7). The court also found no prejudice against petitioner, even if trial counsel was deficient:

> [E]ven if you had had inadequate counsel it wouldn't have made any difference. The evidence against you was so strong and so voluminous. There was so much of it and it was so persuasive that nobody could have saved your skin. So, even if there was error it did not in anyway impact the result adverse to your interest. So the second prong of the Strickland test was not met either.

(7T, 61:20-62:2).

The Court finds that the state court did not unreasonably apply established federal law in reaching its decision. The state court decision was clearly based on a reasonable application of the facts in light of the evidence presented at trial. Thus, Daniels has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted

in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

In sum, Daniels has failed to show any instances of deficient performance by counsel in his case, which would give rise to a claim of constitutional deprivation.  Moreover, even if there was any small instance of counsel's deficiency, Daniels cannot prove the second prong of prejudice.  There was overwhelming and strong evidence against Daniels at trial that would not support an argument that Daniels was prejudiced by counsel's errors.  Therefore, the ineffective assistance of counsel claims are denied on the merits.

B.   Ineffective Assistance of Appellate Counsel

Daniels also broadly asserts that his appellate counsel was ineffective for failing to raise certain issues on appeal, such as the improper jury charges, the admission of the 911 tape and transcript into evidence, and the introduction of non-expert testimony.  These claims were raised on Daniels' remanded PCR petition in state court, and were denied.

Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard previously discussed.  See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  In order to prevail on a claim that appellate counsel was ineffective, Daniels must show that (1) counsel's performance

23

fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Daniels has failed to show that the performance of his appellate counsel was deficient and that he was prejudiced thereby, and in light of the evaluation of this issue by the state court, this Court cannot conclude that the determination of this issue resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact. Williams v. Taylor, supra. Accordingly, the Court will deny relief on this claim.

C.  The 911 Tape and Transcript

Next, Daniels contends that the 911 tapes were altered and should not have been admitted into evidence at trial. Before trial, the court conducted a Driver hearing with respect to the 911 tape and transcript. The State produced two witnesses who testified as to the authenticity, accuracy, and integrity of the recording of the assault. It was admitted that the tape had been sent to the FBI to enhance the voices of the victim and defendant and minimize the voice of the 911 operator. Defense counsel did not object to the authenticity and integrity of the tape, but objected to the inclusion of words of the dispatcher in the

transcript that make reference to "rape".  The court declined to excise the reference since it would be inconsistent with the tape recording.  The court also found the tape was authentic and accurate, and admitted both the transcript and the tape into evidence.

On the remanded PCR hearing, the court ruled that the tape was admissible and that there was no error in failing to object to its admission.  (7T, 59:7-8).

The respondents assert that the tape recording was properly authenticated and shown to be accurate, and that the defense had full and fair opportunity to cross-examine the State witnesses at the Driver hearing, and make a comparison between the master tape and the duplicate.  Thus, there was no denial of due process or a fair trial by the trial court's admission of the tape and transcript into evidence.

This Court finds that petitioner's claim is a matter of a state evidentiary ruling.  Generally, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete

miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

     In this case, the Court finds that the state court's evidentiary ruling with respect to the admission of the 911 tape and transcript did not violate Daniels' right to due process. The trial court committed no errors of a constitutional dimension and a review of the whole record demonstrates that the trial process was fundamentally fair.  A Driver hearing was conducted, and the defense had the opportunity to review the tape and object to it.  Further, there is no showing that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an

27

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Williams</u>, 529 U.S. at 412-13.   Accordingly, this ground for a writ of habeas corpus will be denied.

D.   <u>Admission of Non-Expert Testimony</u>

Daniels further asserts that the trial court erred in allowing non-expert opinion testimony at trial.  Specifically, Lt. McKee of the Trenton Police Department gave opinion testimony as to the victim's appearance when he arrived on the scene of the crime.  He stated that the victim "looked like she had been beaten unmercifully."  (3T, 52:5-14).  Respondents argue that the testimony was relevant to the crime of robbery, and involved the officer's direct observation of the victim's injuries at the scene.

This issue was raised on Daniel's PCR motion.  The PCR court found the officer's description of the victim's appearance to be "perfectly admissible, that's the kind of thing that a non-expert can give his observations.  It's similar to the case law that somebody can say that somebody appeared to be drunk.  You don't have to be an expert for that.  It's part of human experience. So is the kind of description the officer gave as to the victim looking as though she had been badly beaten."  (7T, 61:6-12).

The Court finds petitioner's claim to be an issue of state evidentiary law not generally subject to federal habeas review.

Daniels has failed to establish any due process violation in the admission of this testimony about a direct observation, nor has he shown undue prejudice that resulted in a manifest injustice or an unfair trial with respect to allowing the non-expert description of the victim's appearance.  Thus, Daniels is not entitled to federal habeas relief on this ground.

E.   Excessive Sentence

In Ground Five of his petition, Daniels argues that the sentencing court improperly weighed the aggravating factors to sentence him to the maximum term possible.  He disputes the court's finding as to aggravating factor number one, that the crime was committed in a heinous, cruel, or depraved manner.  He also contends that the court misapplied the aggravating factor relating to the gravity of the harm inflicted.  The court found the "gravity of the seriousness of the emotional harm inflicted on the victim who was incapable of resistance because of the fact that you are a large, strong individual, and she was not, she was no match for you."  (5T, 24:6-10).  Daniels argues that the victim was not elderly, handicapped, or young, and her physical resistance was not virtually impossible.

Respondents counter that Daniels met the minimum statutory predicates for a discretionary extended term under the persistent offender statute, N.J.S.A. 2C:44-3a.

Daniels raised a similar excessive sentence claim in his direct appeal to the New Jersey Appellate Division.  The Appellate Division ruled that, "[w]hile the sentence is severe, given defendant's past record the trial judge did not abuse his discretion in deciding that the aggravating factors outweighed the mitigating factors. [State v. Roth, 95 N.J. 334, 364-65 (1984)].  There was no prohibited double counting of aggravating factors. [See State v. Yarbough, 100 N.J. 627, 643-44 (1985), cert. denied, 475 U.S. 1014 (1986)].  We conclude the sentence was not excessive."  (R43)

Based on the record, this Court finds that petitioner's sentence fell within the permissible statutory limit in effect at the time.  The Court also finds the determining factors advanced by the sentencing judge in support of the extended term were sound and reasonable.  (5T 24:3-25:11).  Moreover, even if this Court was of the opinion that the sentence was excessive, which is not the case, it is well established that "the severity of the defendant's sentence alone constitutes no ground for [habeas] relief." United States ex rel. Jackson v. Myers, 374 F.2d 707, 711 n. 11 (3d Cir. 1967); see also Townsend v. Burke, 334 U.S. 736, 741 (1948).

Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review.  Ervin v. Beyer, 716 F. Supp. 163, 165

30

(D.N.J. 1989); <u>see also</u>  <u>Johnson v. Beto</u>, 383 F.2d 197, 198 (5th Cir. 1967), <u>cert</u>. <u>denied</u>, 393 U.S. 868 (1968); <u>U.S. ex rel.</u> <u>Jackson v. Meyers</u>, <u>supra</u>.  Indeed, absent some constitutional violation, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure.  <u>Rorie v. Beard</u>, Civ.A.No. 04-3380, 2005 WL 825917, *5 (E.D. Pa. April 7, 2005)(*citing* <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988)).  Thus, a federal court will not reevaluate a sentence in a habeas proceeding unless it exceeds the statutory limits. <u>Jones v. Superintendent of Rahway State Prison</u>, 725 F.2d 40 (3d Cir. 1984); <u>see also</u> <u>Williams v. Duckworth</u>, 738 F.2d 828, 831 (7th Cir. 1984), <u>cert</u>. <u>denied</u>, 469 U.S. 1229 (1985)("As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits."); <u>Bonner v.</u> <u>Henderson</u>, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").

Here, petitioner has not alleged that his sentence violates any federal constitutional rights.  Only issues of state law were raised below in state court, and the state appellate court found that the excessive sentence claim was without merit.  Moreover, Daniels' sentence does not exceed the statutory limits.

Consequently, Ground Five of the petition is not subject to federal review and will be denied.

F.   Jury Instructions

In Ground Six, Daniels asserts that the trial court denied him a fair trial and due process based on improper jury charges. He first contends that the trial judge improperly used the term "not guilty" instead of "innocent" in charging the jury on the presumption of innocence.  Second, Daniels alleges that the trial judge failed to give a curative instruction to the jury with respect to Daniels' outburst during trial.  Finally, Daniels argues that the jury charge on circumstantial evidence was misleading when the court stated that "[c]ircumstantial evidence is equally worthy of supporting a finding of fact, even though there may be an alternate explanation."  (4T, 50:17-19).

Respondents counter that Daniels' claims are specious and that he fails to raise a federal constitutional question.

Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.  See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury instruction is "so prejudicial as to amount to a violation of due

process and fundamental fairness will a habeas corpus claim lie."

Id.

Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) )(jury instructions that suggest a jury may convict without proving each

33

element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17 (1997); Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Smith v. Horn, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

At the PCR hearing, the trial court found that there was "no real distinction in the two phrases ['not guilty' and "innocent"] so I find no error to complain of by defendant.  There was no reason whatsoever for his attorney even object to that language in the charge."  (7T, 56:22-25).  Further, the court did not find any error in the trial judge not giving an instruction to the jury to disregard Daniels' outburst.

34

>The failure of the Court or the decision by the Court not to
>blow up the fact in front of the Jury and make them madder
>than hell at the defendant for interrupting the trial when
>he said he was being railroaded is not error.  The Judge has
>the discretion to do as he sees best and you're lucky that
>the Judge didn't chew you up one side and down the other for
>acting that way.  If he had made an issue of it, if he had
>given some sort of curative charge it would only have
>dramatized and emphasized to the Jury and turned them
>against you.  It would have backfired seriously.  The Judge
>used his discretion in your favor by not making a big deal
>out of the way you acted after your plea effort at entering
>a plea without admitting an offense was rejected by the
>state and by the Court.

(7T, 57:1-14).

Daniels fails to point to a federal requirement that the jury instructions he proposes were required; nor can he demonstrate that the lack of the proposed jury charges deprived him of a defense which federal law provided to him.  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, his claims are wholly without merit.  For the purposes of a jury charge, there is no distinction between the terms "not guilty" and "innocent"; they are interchangeable terms.  The charge on circumstantial evidence was perfectly acceptable and did not mandate a conclusion by the jury that they have to accept circumstantial evidence as true.  Accordingly, Daniels' claims are absolutely baseless, and he has not shown a federal constitutional deprivation entitling him to habeas relief.

G.  Cumulative Errors

Finally, Daniels asserts that the cumulative effect of trial errors deprived him of his due process and his constitutional right to a fair and impartial trial.

Even if none of the claims on their own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due process."  United States ex rel. Sullivan v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980); see also Douglas v. Hendricks, 236 F. Supp.2d 412, 436 (D.N.J. 2002) (Walls, J.) (no cumulative error when the trial was fair and verdict supported by sufficient evidence); Pursell v. Horn, 187 F. Supp.2d 260, 374 (W.D. Pa. 2002) ("That the reliability of a state criminal trial can be substantially undermined by a series of events, none of which individually amounts to a constitutional violation, is an idea that has been accepted by nearly every federal court to have addressed the issue.").[3]  In Marshall v. Hendricks, the Court of Appeals for the Third Circuit evaluated a cumulative error claim and found:

> Here, even were we to cumulate all the claimed errors and superimpose them over the extensive trial proceedings, given the quantity and quality of the totality of the evidence presented to the jury, we could not conclude that the New Jersey Supreme Court

---

[3]  Neither the Supreme Court nor the Court of Appeals for the Third Circuit has established a standard by which a claim of cumulative error must be determined.  See Pursell, 187 F. Supp.2d at 374-76 (describing three alternative approaches).

unreasonably applied Supreme Court precedent or
unreasonably determined the facts in making its ruling.

See 307 F.3d 36, 94 (3d Cir. 2002), cert. denied, 538 U.S. 911
(2003).

This Court has determined that no errors occurred or that,
to the extent errors did occur, they were harmless.  A review of
the record reveals that any errors that may have occurred remain
harmless when cumulated, and that the trial was fair and the
verdict was supported by ample evidence.  As found in Marshall,
supra, Daniels has not demonstrated that the actions of the state
courts "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States," or
"resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  Accordingly, this ground for a writ
of habeas corpus will be denied.

V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of
appealability should issue.  See Third Circuit Local Appellate
Rule 22.2.  The Court may issue a certificate of appealability
only if the petitioner "has made a substantial showing of the
denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For
the reasons discussed above, this Court's review of the claims
advanced by Daniels demonstrates that he has failed to make a

substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## **CONCLUSION**

For the foregoing reasons, this Court finds that Daniels' § 2254 habeas petition should be denied on the merits.  A certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.


s/Anne E. Thompson
ANNE E. THOMPSON
United States District Judge

DATED:   October 4, 2005